Mr. Justice Merrick
delivered the opinion of the Court:
In this case a decree was had against the defendants for a specific sum of money. Upon that decree an attachment by way of execution was issued, which was laid in the hands of the Columbia National Bank of Washington City, in the District of Columbia, as garnishee, the bank being summoned to appear under the garnishment, and, in answer to interrogatories, set forth that it had in its possession a certain amount of money to the credit of the defendant in the cause. A motion was made to quash the attachment upon sundry grounds:
First. That the court had no jurisdiction to issue the writ of attachment in this case.
Second. That the writ of attachment was not duly served.
Third. That the defendant in the action, showing by an affidavit of his that the funds on deposit, although deposited to his credit, were, in point of fact, funds made up from divers sums which he had received as agent for third parties, the money was not liable to attachment, but was to be left in his hands and under- his uncontrolled disposition, with a view that he might return it to the parties for whose benefit he held it.
So far as the first question is concerned — that the court had no jurisdiction to issue the writ of attachment — the argument goes upon the idea that prior to the organization of the present court the process of execution from chancery *35 was either by Jim facias or attachment for contempt and attachment by proclamation, sequestration, &c., as provided in the Act of 1785, chapter 72, of the State of Maryland; and that in the absence of any specific legislative grant of power to issue an attachment by way of execution out of chancery this court could not do it.
By Rule 82 of this court it is provided in cases of decrees for money the process either of fieri facias or attachment by way of execution shall issue for the recovery and satisfaction of the decree as at law. That rule was passed in pursuance of the provision of the act of Congress for the organization of this court, section 770, page 92, of the Revised Statutes of the District, which is .in the words following:
“That the'Supreme Court in General Term shall adopt such rules, &c., as it may deem necessary for regulating the practice of the court; and from time to time revise and alter such rules.”
It is objected that this is not making rules but is legislation. We are of a different opinion. We think the law is broad enough to authorize this court to control its processes and to prescribe them within the limits of the selection of a process known to the laws of the land. It was in that sense that the rule in its present form was adopted, as we understand. It has been practiced upon ever since its adoption without question, and we do not think that there is anything in the argument which has been submitted to justify us in uprooting a settled and universal acceptance of the construction of the power conferred by the statute from which I have read an extract. It might upset and disturb property interests to a degree that cannot now be foreseen and understood, if it were maintained that the court of chancery in the execution of its decrees has no power to issue an attachment by way of execution. No good purpose could follow from narrowing the construction and limiting the power which • has been heretofore exercised *36 under the grant which I have read from the Revised Statutes. The fieri facias is granted in terms.
The writ of sequestration and the attachment for contempt have always existed, and the writ of sequestration is very nearly akin to and is substantially the same in all its practical operation with the attachment by way of execution. Therefore, as we have said, there is no good purpose to be subserved in attempting to narrow the construction.
Process is a very different thing from jurisdiction. If it were a question of jurisdiction this court could not vest itself with jurisdiction by a rule. But process, which is the flower, or the fruit rather, of jurisdiction, is a matter to be regulated, and has always been regulated from the earliest time, by the practice of the court. The familiar processes to which I have .just adverted, attachments 'with proclamation, process of sergeant-at-arms and sequestration, followed by the statutory addition of fieri facias, have all been the outgrowth of chancery regulation itself, and not the growth of statute. It is only another familiar means-to carry out the end, the power to accomplish which end had already been delegated by the proper legislative power.
The second objection, that the writ was not properly served, we think is likewise untenable. The writ was intended to attach credits in the hands of the Columbia National Bank of Washington City, by service upon the cashier. He was served with copies of the writ and interrogatories for the garnishee and upon the return of the writ the Columbia National Bank of Washington City appeared and answered. Its first answer not being- under seal was objected to, and thereupon the answer was amended to .as to appear under the common seal of the bank. The garnishee was sufficiently identified, as we think by the service of the attachment and the response to it under the circumstances and in the maimer indicated. It is perfectly true that a person cannot make himself voluntarily a garnishee; but the bank did not make itself *37 voluntarily a garnishee in this case. The process was served upon it and it was identified by a name. It had that recognized name, and although .the name was not given in full, it appeared by its full name and answered. That, it seems to us, was a sufficient service and a sufficient designation of the garnishee to accomplish the purposes of the writ and to subject the garnishee to the process of the court, and relieve it from the imputation of having voluntarily come in and answered to a writ which had never been served upon it.
The third objection, and the one of most importance as a practical question is, that upon the return of the writ and of the motion of the defendant it was suggested to the court that the funds attached did not belong to the defendant, he having set forth in his motion to quash and in the affidavit of his own clerk appended thereto, that the funds belonged to the several parties for whom he was an agent and on whose behalf he had deposited the funds, although they were deposited' in his own name and to his general credit.
Upon an examination of the authorities it appears to be well settled that while a debtor having funds deposited in his own name in bank, which really belong to another person, are not absolutely, by force of the fact of. having been so deposited in his own name, subject to the right of the depositor’s creditors, yet the question always is who shall be the party by whose instrumentality they shall be exempted. Prima facie they are the funds of the debtor, being deposited in his name. While it is perfectly true that his creditor may follow those funds, or rather, his cestui que trust, the man in whose behalf he has deposited the funds, may come in and vindicate his title to them, and claim them, and that the creditors of the party whose funds are attached can have no better right to the funds than the debtor himself, yet the proper person must come into court for the purpose of asserting that right. Public policy forbids *38 the debtor himself, who has deposited the funds in his own name, from setting up the pretense that he holds them as trustee for another. If the party for whom he is trustee comes in, intervenes in the case by way of claim of property, or other suggestion, and demands the funds as his, and proves in point of fact that they are his by tracing the identity of the funds, although covered up with the name of the debtor, the court will withdraw its hand and allow the true owners to take the funds. But public policy forbids us to receive a suggestion of that sort from the debtor, for the debtor himself, the very next day, may resume the control which he had as between him and the garnishee over the funds and defeat both the attaching creditor and his own cestui que trust.
These distinctions are fully set forth in the case of Jackson against the Bank of the United States, in 10 Pa. St., where it is said that, although it may be suggested that the funds belong to another, that is nq defense. In 57 Pa. St., 202, explaining Jackson vs. The Bank, it is said that where notice is given and the claim is made on behalf of the cestui que trust of the funds, and he establishes clearly his title to them, the hand of the court will be withdrawn, and the court will award that the funds be paid over to the true owner.
In 111 Mass., 496, reiterating the doctrine of both of these cases, the court declared explicitly that public policy forbids the court to allow such a defense to be made on behalf of the debtor himself. The true owner has the right to come in, and if the true owner stands by and remains silent, public policy requires that the funds shall be treated as the funds of the debtor and condemned under the attachment.
For these reasons we are of opinion that there is nothing in the various objections which were taken to the attachment; and that the judgment of the circuit court in overruling the motion and granting final judgment of condemnation was correct and must be affirmed.